UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **GLORIA CLADERA**, | 2:21-CV-11684-TBG-JJCG |
| Plaintiff, | **ORDER ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION** |
| vs. | |
| **COMMISSIONER OF SOCIAL SECURITY,** | **(ECF NO. 18)** |
| Defendant. | |

This matter is before the Court on Magistrate Judge Jonathan J.C. Grey's Report and Recommendation of August 9, 2022 (ECF No. 18), recommending that Plaintiff's motion for summary judgment be denied (ECF No. 12), that Defendant's motion for summary judgment be granted (ECF No. 16), and that the findings of the Commissioner be affirmed. Plaintiff filed two objections to the Report and Recommendation (ECF No. 19), and the Commissioner filed a response (ECF. No. 20).

The Court has reviewed Magistrate Judge Grey's Report and Recommendation, and Plaintiff's objections thereto. For the reasons set forth below, Plaintiff's objections are **SUSTAINED IN PART** and **OVERRULED IN PART**. Accordingly, the Report and Recommendation is **ACCEPTED IN PART** and **REJECTED IN PART**, and this case is

1

remanded to the Commissioner under 42 U.S.C. § 405(g) for further proceedings consistent with this order.

## I.   BACKGROUND

Gloria Cladera used to work as a dental assistant. (ECF No. 9, PageID.65.) In April 2019, she applied for disability benefits, asserting that she became disabled on March 7, 2019 from hearing loss, Meniere's disease (an inner ear disorder that can cause vertigo and tinnitus), and numbness in her hands and fingers. (*Id.* at PageID.178.)

After her application was initially denied, Cladera requested a hearing. She and a vocational expert testified telephonically before an ALJ in July 2020. (*Id.* PageID.59-84.) On August 4, 2020, the ALJ issued a decision denying benefits, concluding that Cladera was not disabled because she could still work at jobs that existed in significant numbers despite certain work-related limitations. (*Id.* at PageID.42-55.)

Following the five-step process for evaluating Cladera's claim, *see* 20 C.F.R. § 404.1520, the ALJ found that Cladera had sensorineural hearing loss and cervical radiculopathy, which were severe impairments, and disturbance of labyrinthine-vestibular function ("DLVF"), anxiety, and depressive disorder, which were non-severe. (*Id. at* PageID.44-47.)

In assessing Cladera's Residual Functional Capacity, the ALJ found that Cladera could still perform "light work" with the following limitations: she could "frequently" balance and reach, push, pull, handle, and finger; "occasionally" climb, stoop, kneel, crouch, or crawl and use

2

her hearing; "never" use ladders, ropes, or scaffolds; and needed to avoid extreme temperatures, humidity, machinery, unprotected heights, and more than "moderate" noise levels. (*Id.* at PageID.47.) From the Vocational Expert's testimony, the ALJ concluded that Cladera could still work as an inspector/hand packager, collator, or router with these limitations. (*Id.* at PageID.54.) The ALJ's decision contained an alternative finding that, if Cladera were limited to "sedentary work" with the other restrictions that were assessed, significant jobs would still exist for her as a stuffer or pin-or-clip fastener. (*Id.* at PageID.55.)

After the Appeals Council declined further review (*id.* at PageID.28-31), Cladera appealed to this Court. She argued that the ALJ's decision failed to incorporate all of her work-related limitations, erred in its treatment of doctors' opinions, and mischaracterized her testimony about her ability to sustain daily living activities. (ECF No. 12.)

Judge Grey issued a Report and Recommendation affirming the ALJ's decision. (ECF No. 18.) As relevant here, the R&R agreed with Cladera that the ALJ did not adequately explain why she disregarded noise and balance restrictions suggested by an agency consulting doctor. From information in the Dictionary of Occupational Titles, however, the R&R concluded that the error was harmless because Cladera could still work as a "router" even with the restrictions that doctor had proposed. And the R&R concurred with the ALJ's treatment of Cladera's testimony about her daily activities.

3

## II.    STANDARD OF REVIEW

Either party may serve and file written objections "[w]ithin fourteen days after being served with a copy" of the report and recommendation. 28 U.S.C. § 636(b)(1). Objections must cite the specific portion of the report and recommendation to which they pertain.

This Court must review de novo (as if it were considering the issues for the first time) the parts of a report and recommendation to which a party objects. *See* 28 U.S.C. § 636(b)(1). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge … or receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

For any parts of the report and recommendation reviewed de novo, the Court's judicial review is nevertheless circumscribed: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."[1] *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is not a high standard, requiring "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

---

[1] The ALJ's decision stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

## III.   ANALYSIS

Cladera's objections focus on the ALJ's RFC—that is, her "Residual Functioning Capacity"—assessment. An RFC is "the most [an individual] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). In assessing an RFC, an ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 588 (6th Cir. 2019) (quoting SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996)).

### A.   Objection One

Objection One disagrees with the R&R's conclusion that it was a harmless error for the ALJ to fail to explain why she did not incorporate additional balance and noise level restrictions, as suggested in a report by Dr. Saabat Abassi, an agency consulting doctor who reviewed Cladera's medical records. Remand is not required in a Social Security case if there is no reason to believe that it would lead to a different result. *See Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004).

Cladera begins by noting that the ALJ found Dr. Abassi's opinion persuasive and argues that, if Dr. Abassi is correct that she is limited to balancing "occasionally" rather than "frequently," her balance restriction is logically inconsistent with the ALJ's finding that she is able to do "light work." (ECF No. 19, PageID.513-14.) Urging that she may actually be limited to "sedentary work," Cladera argues that a remand could lead to a disability finding because a change to the exertional capacity in her

5

RFC may affect a vocational expert's analysis of the types of jobs she can perform. (*Id.*) Cladera continues that, even if she can do light work, more exacting balance and noise restrictions could still affect the expert's conclusions about the amount of work available for her in the economy. (*Id.* at PageID.514-15)

20 § C.F.R. 1567 sets forth the Administration's definitions of the exertional capacities and defines "light work" as:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a *good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.* To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. *Id.* at § 1567(b) (emphasis added).[2]

At first glance, the ALJ's finding that Cladera can perform "light work" despite her decision not to incorporate Dr. Abassi's balance restriction appears to be well-supported. Dr. Abassi himself opined that Cladera can perform "light" work despite suggesting a more exacting balance restriction than the ALJ ultimately adopted. (ECF No. 9,

---

[2] Sedentary work, meanwhile, is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledges, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. *Jobs are sedentary if walking and standing are required occasionally* and other sedentary criteria are met." *Id.* at § 1567(a) (emphasis added).

PageID.92-95.) Cladera does not explain why one portion of his opinion should be credited over another. And the ALJ concluded that Cladera would remain employable as a stuffer or pin-or-clip fastener even if she were limited to sedentary work with the other restrictions assessed in the RFC. (*Id.* at PageID.55.)

But because Dr. Abassi's opinion also contained a more exacting noise restriction, the Court agrees with Cladera that the ALJ's failure to explain why she did not adopt Dr. Abassi's restrictions requires a remand. This noise level restriction is not accounted for in the ALJ's alternate finding. If Cladera is limited to "sedentary work" and cannot withstand "moderate noise," the Dictionary of Occupational Titles—referenced by the vocational expert and cited by the ALJ—suggests that Cladera is precluded from working as a stuffer or a pin-or-clip fastener. *See Dictionary of Occupational Titles*, Stuffer, 731.685-014, 1991 WL 679811; Pin-or-Clip Fastener, 735.687-022, 1991 WL 679982.

The ALJ did not pose any hypothetical questions to the vocational expert incorporating either of Dr. Abassi's restrictions, so the expert provided no testimony about what jobs would still exist if they had been adopted. *Cf. Dover v. Comm'r of Soc. Sec.*, No. 20-11883, 2021 WL 4205623, at *3 (E.D. Mi. May 27, 2021) (affirming disability determination despite error in RFC because expert testified regarding availability of jobs with additional restrictions that should have been adopted). The Sixth Circuit has explained that, when a hypothetical

7

question does not adequately describe all of a claimant's limitations, the error is "fatal to the VE's testimony and the ALJ's reliance upon it." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002).

The Commissioner argues that the ALJ's decision may be salvaged because a more exacting balance restriction does "not … necessarily interfere" with the ALJ's assessment that Cladera remains capable of performing "light work." (ECF No. 20, Page ID.522.) Further, the Commissioner notes that the Dictionary of Occupational Titles lists no balance requirements for the "router" job identified by the ALJ and states that it occurs at a "quiet" noise level. *See Dictionary of Occupational Titles*, Router, 222.587-038, 1991 WL 672123. (*Id.* at PageID.523.) The Commissioner suggests that, because the expert affirmed his testimony was consistent with the Dictionary, the Court may use information in the Dictionary as a basis for affirming the ALJ's decision. (*Id.*)

But the ALJ herself must determine what jobs Cladera can still perform after she evaluates whether and how to include Dr. Abassi's proposed restrictions in the RFC. *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009). As the Commissioner appears to acknowledge, the ALJ may choose to re-evaluate her finding that Cladera can do "light work" after re-visiting Dr. Abassi's opinion that she can only

"occasionally" balance.[3] *See* 20 C.F.R. § 404.1546(c) (placing responsibility for assessing RFC on ALJ after disability application is denied at initial levels). Further, given the ALJ's recognition that Cladera struggles with high frequency drilling sounds, the ALJ may decide that limiting Cladera to a "quiet" noise level without further noise-related restrictions does not sufficiently incorporate Dr. Abassi's opinion that Cladera should avoid "even moderate noise." (The Court notes that Cladera's previous job as a dental assistant, which she can no longer perform, is rated in the Dictionary as occurring at a "Level 2 – Quiet" noise level despite the exposure to high frequency drilling sounds that appear to be inherent in the job. *See Dictionary*, Dental Assistant, 079.361-018, 1991 WL 646851.) These are determinations for the ALJ to make in the first instance.

And evidence about Cladera's work prospects can come only from the vocational expert, based on his knowledge and experience, after he is presented with an appropriate hypothetical question. Although agency guidelines note that ALJs and vocational experts rely "primarily" on the Dictionary in making disability determinations, *see* SSR 00-4p, neither

---

[3] The current Program Operations Manual System instructs that "[d]ifficulties maintaining balance on dry, flat, stationary surfaces or maintaining body equilibrium for walking or standing should be addressed in the exertional portion of the RFC under 'standing and walking.'" *Medical and Vocational Quick Reference Guide*, POMS DI 25001.001.

the ALJ nor VEs are required to follow it. *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009); *see also Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009) (noting that "[w]hether the magistrate judge's review of the DOT was permissible is far from clear"); *Ellison v. Comm'r of Soc. Sec.*, 101 F. App'x 994, 996 (6th Cir. 2004) (noting that vocational experts "may rely on sources other than the [Dictionary]"). As the ALJ herself recognized, some of the expert's testimony in this case was based on his own knowledge and experience – *i.e.*, information outside the Dictionary.

Given the possibility that the RFC does not incorporate all of Cladera's restrictions, and the related possibility that the hypothetical questions to the vocational expert also did not incorporate these limitations, the ALJ's decision is unsupported by substantial evidence. Objection One is therefore **SUSTAINED**.

### B.   Objection Two

Cladera's second objection is that the R&R erred in finding no fault with the ALJ's evaluation of her daily living activities. (ECF No. 19, PageID.518-19.) She argues that, in finding that she could "prepare[] her own meals, perform household chores, drive a car, shop for groceries, and garden[] (twice a week)," the ALJ overstated her ability to do these activities on a sustained basis and mischaracterized her self-reported limitations with them. (*Id.*)

As the R&R correctly recognized, however, an ALJ's decision not to accept all of a claimant's subjectively reported limitations lies within a "zone of choice" that cannot be disturbed by a reviewing court. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). An ALJ takes into account many factors, including "daily activities … location, duration, frequency, and intensity of … pain or other symptoms." 20 C.F.R § 404.1529(a), (c). But she is not required to accept a claimant's subjective complaints. *Id.* at § 404.1529(c)(4); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003).

The ALJ permissibly determined that the types of activities Cladera reported she was still able to do were not consistent with her allegations of total disability. Cladera highlights her testimony that she performs chores with "many breaks," prepares meals without using a knife, only gardens on some days, and on other days "pretty much stays in bed." But she does not articulate what additional restrictions the ALJ should have assessed based on her subjective complaints, nor does she point to any objective medical evidence in the record that the ALJ failed to consider. The ALJ acknowledged, for instance, that one of her treating physicians opined she could not stand for most of a workday and needed to lie down frequently. (ECF No. 9, PageID.51.) And the ALJ gave permissible reasons for discounting that opinion: the treating physician was Cladera's brother and examined her only bi-annually. A reviewing court does not have authority to second-guess how the ALJ chose to weigh

11

the evidence. *Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 817 (6th Cir. 2020).

Objection Two is therefore **OVERRULED**.

## CONCLUSION

For the above reasons, Plaintiff's Objections to Magistrate Judge Grey's Report and Recommendation (ECF No.19) are **SUSTAINED IN PART AND OVERRULED IN PART**. The Court **ACCEPTS IN PART AND REJECTS IN PART** the Report and Recommendation (ECF No. 18). Judgment shall enter in favor of Plaintiff against the Commissioner, **REVERSING** the Commissioner's decision that Plaintiff is not disabled and **REMANDING** this case to the Commissioner under 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 29th day of September, 2022.


BY THE COURT:


/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge

12